IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DR. GREGG VALENZUELA,

        Plaintiff,

    vs.

MT. HAWLEY INSURANCE
COMPANY,

        Defendant.

Case No.  1:20-CV-0250-SWS/MLC

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on the parties cross *Motions for Summary Judgment* (ECF Nos. 31 & 32).  The Court, having considered the briefs and materials submitted in support of the motions and respective responses thereto, and being otherwise fully advised, FINDS and ORDERS as follows.

### BACKGROUND

Plaintiff, Dr. Gregg Valenzuela,[1] is a doctor in Albuquerque, New Mexico who has been sued for medical malpractice by the Estate of Billie Jo Hall in the Second Judicial District Court for the County of Bernalillo, State of New Mexico ("malpractice action").  (Compl. ¶¶ 3, 5, 7-8.) At the time Dr. Valenzuela treated Ms. Hall during the autumn months of 2014, Dr. Valenzuela was working as an independent contractor under a locum tenens agreement with Alliance Recruiting Resources, Inc. ("Alliance"), which had an agreement with Presbyterian Healthcare

---

[1] The filings suggest the correct spelling of Plaintiff's last name is "V-a-l-e-n-z-u-e-l-a", despite the Complaint's caption.

Services in New Mexico.  (*See* Valenzuela Aff., ECF No. 31-1; Pl.'s Ex. 2, ECF No. 31-2; Pl.'s Ex. 3, ECF No. 31-3.)  Pursuant to the locum tenens agreement, Alliance agreed to "provide Claims Made malpractice insurance coverage" which would insure Dr. Valenzuela "for services performed for Alliance Recruiting Resources" and also included "extended reporting period ('tail') coverage[.]"  (Pl.'s Ex. 2 at 1.)  Dr. Valenzuela left the employ of Alliance and began working directly for Presbyterian Healthcare on December 24, 2014, just a few days before the death of Ms. Hall.  (Valenzuela Aff. ¶ 4; Pl.'s Ex. 3; Def.'s Ex. A-5, ¶ 15, ECF No. 32-6.)

On February 22, 2016, Defendant Mt. Hawley Insurance Company ("Mt. Hawley") issued a Professional Liability Policy to Alliance, a Texas company, effective February 26, 2016 to February 26, 2017, with a retroactive date of February 26, 2003.  (Pl.'s Ex. 4, ECF No. 31-4.)  Dr. Valenzuela is not identified by name in the subject insurance policy; however, the insurance policy provides coverage for persons insured thereunder, which includes the named insured, Alliance, as well as "[a]ny physician . . . while providing Medical Professional Services under a contract of employment or service contract with the Named Insured . . . ."  *Id.* at 1, 10.  The policy also provides Mt. Hawley "shall have the right to settle any Claim as it deems necessary."  *Id.* at 10, ¶ III.B.

In July 2016, the Estate of Ms. Hall brought the underlying malpractice action against Presbyterian Healthcare Services ("PHS").  Although the initial complaint did not name Dr. Valenzuela as a defendant, he became aware of the lawsuit in the fall of 2016 and reached out to in-house legal counsel for PHS regarding whether he needed to hire his own counsel to help defend the case.  (*See* Pl.'s Ex. 3; Def.'s Ex. A-3, ECF No. 32-4.)  Because Dr. Valenzuela was not a PHS employee at the time he treated Ms. Hall, PHS counsel advised him to obtain an attorney's assistance and contact the insurance carrier who insured him during that time to see if they would

appoint an attorney to represent him. *Id.* On November 21, 2016, Dr. Valenzuela emailed Amy Galloway, Operations Manager for Rockbridge Underwriting in Houston, Texas,[2] to inquire about representation and whether there was anything more he should be doing. (*See* Pl.'s Ex. 6, ECF No. 31-6; Def.'s Ex. A-2, ECF No. 32-3.) After confirming Dr. Valenzuela was working for Alliance at the time he treated Ms. Hall, Ms. Galloway forwarded information about the lawsuit to Alliance. (Pl.'s Exs. 5, 7.)

Eventually, on August 22, 2017, the complaint in the malpractice action was amended to include a claim against Dr. Valenzuela. (*See* Def.'s Ex. A-5.) On October 18, 2017, Dr. Valenzuela notified Mt. Hawley of the malpractice claims alleged against him by forwarding a copy of the underlying amended complaint, and Mt. Hawley thereafter agreed to provide him a defense under a reservation of rights. (*See* Falkner Decl. ¶ 5; Def.'s Ex. A-4, ECF No. 32-5; Def.'s Ex. B at 3, ECF No. 32-7; Pl.'s Ex. 8, ECF No. 31-8.) Alliance is not a party to the malpractice action (*see* Def.'s Ex. C-5, ECF No. 32-10), and Dr. Valenzuela denies the malpractice allegations against him (Valenzuela Aff. ¶ 7). In November 2018, Dr. Valenzuela emailed Ms. Galloway requesting a copy of the insurance policy Mt. Hawley issued to Alliance, but Mt. Hawley refused to provide a copy without a release from Alliance to do so. (Pl.'s Ex. 9, ECF No. 31-9.)

Dr. Valenzuela later retained an independent lawyer to act as his personal counsel who, on June 26, 2019, advised counsel hired by Mt. Hawley that Dr. Valenzuela did not consent to any settlement of the underlying malpractice action. (*See* Pl.'s Ex. 10, ECF No. 31-10.) Dr. Valenzuela's personal counsel stated: "If and when there is a settlement offer Dr. Valenzuela's insurer has determined it wishes to accept, Dr. Valenzuela will assume responsibility for his defense and, if necessary and to the extent legally required, will otherwise release his insurer from

---

[2] Although the signature line on Ms. Galloway's email indicates she worked for Rockbridge Underwriting (*see* Pl.'s Ex. 5), Defendant represents she was an operations manager for Mt. Hawley (Falkner Decl. ¶ 4, ECF No. 32-1).

its duty to defend and indemnify him in the litigation." *Id.*  Mt. Hawley rejected Dr. Valenzuela's demand, writing in response:  "Mt. Hawley [] has a contractual right to settle without Dr. Valenzuela's consent in the event a reasonable opportunity to resolve [the underlying] case and eliminate any possible liability exposure to Dr. Valenzuela arises." (Pl.'s Ex. 11, ECF No. 31-11.) On October 14, 2019, following a settlement demand from the underlying plaintiffs in the malpractice action (which was rejected), Mt. Hawley reiterated to Dr. Valenzuela its position that, pursuant to the subject policy, it "retains the sole right to settle if presented with a reasonable opportunity to do so." (Pl.'s Ex. 12, ECF No. 31-12.)

Upset with Mt. Hawley counsel's engagement in negotiations toward settlement of the malpractice action, Dr. Valenzuela, through his independent counsel, filed this action on January 17, 2020 in the Second Judicial District Court for the County of Bernalillo, State of New Mexico.[3] (*See* Compl. ¶¶ 12, 47, ECF No. 1-1.)  In his Complaint for Declaratory Relief,[4] Dr. Valenzuela alleges Defendant Mt. Hawley "intends" to settle the malpractice action without his consent. *Id.* ¶ 53. He claims a settlement of the malpractice action "would not be a reflection of the merits of the case" but rather be "based on the economic benefit to the insurance company using a simple risk assessment." *Id.* ¶¶ 15-16.  Dr. Valenzuela further claims "[t]he risk assessments and the economic benefits to insurance companies like Mt. Hawley typically do not consider the rights and interests of the insured party to the agreement," *id.* ¶ 17, and any settlement of the malpractice action would have a significant, adverse impact on his licensure status in New Mexico, *see id.* ¶¶ 18-24.  Plaintiff's Complaint expressly requests declaratory relief as follows:

---

[3] Defendant removed Plaintiff's action to this Court on March 19, 2020, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The Court denied Plaintiff's subsequent motion to remand his case to the state court in which it was filed. (*See* ECF No. 18.)
[4] The Court previously dismissed without prejudice Plaintiff's additional claims for Improper Taking and Prima Facie Tort. (*See* ECF No. 19.)

- Declaratory Judgment ordering Mt. Hawley to immediately cease its attempts to improperly impose upon Dr. Valenzuela the restrictions of its contract with Alliance Recruiting Resources, Inc.;

- In the alternative, if the terms of the Mt. Hawley policy are binding on Dr. Valenzuela, a Declaratory Judgment ordering that the terms of the [] policy are not binding on Dr. Valenzuela if he disavows coverage under the policy and that Dr. Valenzuela has the right to disavow coverage under the Mt. Hawley policy; [and/or]

- Declaratory Judgment [] ordering that the claims made against Dr. Valenzuela in the [malpractice action] cannot be settled without his consent[.]

(Compl. at 10.)

By his summary judgment motion, Plaintiff seeks an order finding Mt. Hawley cannot settle the underlying malpractice action without his written consent. By its cross motion, Mt. Hawley argues it is entitled to judgment as a matter of law on Plaintiff's claim for declaratory relief.

### STANDARD OF REVIEW

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (2010) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted). In reviewing a motion for summary judgment, the Court is to determine whether there is evidence to support a party's factual claim, *Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007), and, in doing so, must view the

evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011).

DISCUSSION

In diversity cases, courts look to the substantive law of the forum state.  "When interpreting insurance policies, New Mexico looks to the law of the state where the policy was issued[.]" *Nat'l Am. Ins. Co. v. ABC Concrete Mfg. Co.*, 370 F. Supp. 3d 1291, 1299 (D.N.M. 2019).  Here, the policy was issued to Alliance in Kingwood, Texas, and includes a notice for Alliance as a Texas policyholder.  (*See* Def.'s Ex. A-1, ECF No. 32-2 at 1-2.)  Accordingly, Texas law applies to determine the coverage issues implicated here.  *See Cordova v. Peavey Co.*, 2005 WL 8163790, at *4 (D.N.M. June 3, 2005) ("Thus, the policies were issued to and executed in Texas, and the Court will apply Texas law in determining whether the policies at issue provide coverage.").

Plaintiff does not challenge the validity of the policy language itself; rather, he argues he should not be bound by the insurance policy because he was not a party to it.  Specifically, Plaintiff presents the issue as "whether [he] can be bound by a policy provision that allows Mt. Hawley to settle claims against him without his permission when he was never offered a 'consent to settle' provision, was not a party to the insurance contract and there was never a 'meeting of the minds' as to his rights under the insurance policy."  (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. at 2.)  The Court is not persuaded.

It is undisputed Plaintiff entered into a locums tenens agreement with Alliance.  Under the Agreement, Alliance was required to pay Plaintiff per specified rates and to provide Plaintiff with "Claims Made malpractice insurance coverage." (Pl.'s Ex. 2 at 1.) The Agreement also required Alliance to obtain "tail" coverage or continue its blanket policy to cover Plaintiff after he was no longer working for Alliance.  It appears Alliance did not offer, but neither did Plaintiff request or

require, a consent to settle provision be included in the medical malpractice insurance Alliance was required to provide him. In performance of that Agreement, Alliance obtained the policy from Mt. Hawley, providing coverage to Plaintiff as an Additional Named Insured. (Pl.'s Ex. 4, ¶ IV.B.) A party does not have to be a named insured to qualify as an insured entitled to benefits under an insurance policy. *See In re Deepwater Horizon*, 470 S.W.3d 452, 464-65, 468-69 (Tex. 2015) (noting Texas law has "long allowed" insurance policies to incorporate other documents by reference and examining written contracts to determine whether party not named in policy qualified as an additional insured); *Paragon Sales Co. v. New Hampshire Ins. Co.*, 774 S.W.2d 659, 660 (Tex. 1989) ("A third person not a party to a contract may have a cause of action to enforce the contract if the contract was made for that person's benefit.").[5]

After being named as a defendant in the underlying malpractice action, Dr. Valenzuela notified Mt. Hawley of the claims alleged against him and accepted the defense provided by Mt. Hawley for over one and one-half years before obtaining independent counsel.[6] It was only after Plaintiff realized Mt. Hawley had the right to control settlement that he belatedly began questioning his status under the policy and contending Mt. Hawley was required to obtain his consent before it could settle the claims against him. However, Texas courts have consistently upheld policy provisions affording the insurer discretion to settle claims without the insured's consent. *Martin-de-Nicolas v. AAA Texas Cty. Mut. Ins. Co.*, No. 03-17-00054-CV, 2018 WL 1868048, at *7 (Tex. App. Apr. 19, 2018) ("the policy affords AAA the discretion to settle claims made against its insured . . . without the insured's consent"); *Dear v. Scottsdale Ins. Co.*, 947

---

[5] It is worth noting this principle holds true under New Mexico law as well. *See Salas v. Mountain States Mut. Cas. Co.*, 202 P.3d 801, 806 (N.M. 2009) (discussing disclosure requirements for "known" insureds, "whether the insured is a party to the insurance contract or a third-party beneficiary thereof"); *Krieger v. Wilson Corp.*, 131 P.3d 661, 674 (N.M. Ct. App. 2006) (concluding alleged additional insured was entitled to sue insurer for coverage as a potential indemnitee entitled to coverage).

[6] Mt. Hawley has been defending Plaintiff in the malpractice action for three years.

S.W.2d 908, 913-14 (Tex. App. 1997), *writ denied* (Oct. 2, 1997), *and disapproved of on other grounds by Apex Towing Co. v. Tolin*, 41 S.W.3d 118 (Tex. 2001) (policy language unambiguously vested insurer with an absolute right to settle third-party claims in its own discretion and without insured's consent, even where the allegations of underlying suit are groundless, false, or fraudulent); *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 90 (Tex. App. 2003) (finding provision giving insurer right to settle claims or suits did not include a requirement that the insurer obtain consent from policyholder to settle).[7]  Plaintiff does not have the right to unilaterally change the terms of the insurance policy after the fact or to somehow read the settlement provision out of the policy.  None of the cases Plaintiff cites address a scenario where, as here, an insurer is providing a party with a defense pursuant to an insurance policy that explicitly gives the insurer the right to settle as it deems necessary.  Thus, pursuant to the terms of the policy, Mt. Hawley is contractually entitled to settle the underlying malpractice claims against Plaintiff as it deems necessary and without Plaintiff's consent.

Plaintiff argues it would be unconscionable to enforce the policy provision allowing Mt. Hawley to settle claims against him without his consent.  This is so, Plaintiff contends, because any settlement in a civil action would adversely affect his licensure status in New Mexico. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Rivera v. Am. Gen. Fin. Servs.*, Inc., 259 P.3d 803, 816-17 (N.M. 2011).  Though a settlement may pose a risk of adverse impact to Dr. Valenzuela's medical license based on New Mexico reporting requirements, Plaintiff cites no case indicating these types

---

[7] Again it is worth noting these types of settlement provisions are also recognized under New Mexico law. *See Landin v. Yates*, 651 P.2d 1026, 1027 (N.M. Ct. App. 1982) ("The purpose of the policy clause granting to the company the privilege of making such settlement as it deems expedient is to give the company control over the handling of the claim against the insured.").

of settlement provisions violate public policy and, as discussed above, these provisions are common and routinely upheld.

Plaintiff offers two additional theories purportedly supporting his position that Mt. Hawley cannot settle the malpractice claims without his consent, specifically: (1) the New Mexico Rules of Professional Conduct require a lawyer to abide by a client's decision whether to settle a matter; and (2) Mt. Hawley should be estopped from claiming Plaintiff is its insured when it has failed to fulfill its fiduciary duties to Plaintiff. However, none of the cases cited by Plaintiff involve a factual scenario similar to that here, i.e. an insured seeking to avoid being bound by the terms of an insurance policy with a right to settle provision in order to control whether a settlement is reached. While *Gomez v. Jones-Wilson* reaffirmed that "an attorney may not settle a client's claim without specific authorization from the client," 294 P.3d 1269, 1273 (N.M. Ct. App. 2012), that case did not involve the interpretation of an insurance policy with a right to settle provision. Similarly, Plaintiff cites *Hayes v. Eagle-Pitcher Industries, Inc.* for the proposition that Mt. Hawley's retained counsel cannot settle over Plaintiff's objections. 513 F.2d 892, 893 (10th Cir. 1975). However, *Hayes* is not an insurance case and does not even remotely address whether an insurance company has the right to settle pursuant to a specific policy provision. The question here is whether Mt. Hawley has the right to settle without Plaintiff's consent based on the policy's settlement provision.

Acknowledging the New Mexico courts have not considered a case directly on point, Plaintiff cites *Landin v. Yates*, 651 P.2d 1026 (N.M. Ct. App. 1982), in which the court stated, "[a]n insurer who violates a fiduciary duty to an insured, one which inures to the benefit of a third person, should not operate to the detriment of the insured." *Id.* at 1028. *Landin* cited to the New Jersey case of *Lieberman v. Employers Ins. of Wausau*, 419 A.2d 417 (N.J. 1980), which Plaintiff

asserts is "instructive on the conflict Mt. Hawley has created here" and shows "the insured's defense counsel breached his duty to the insured by settling over the insured's objection." (Pl.'s Mot. for Summ. J. at 16, 17.)  However, neither of these cases support Plaintiff's position here. *Landin* recognizes an insurance policy may allow the insurer to settle any claim against the insured it deems appropriate without the consent of the insured, so long as the insurer doesn't foreclose an insured's claim against a third person. 651 P.2d at 1027-28. And the policy in *Lieberman* included a provision requiring the insured's consent to settle.  The New Jersey court reasoned, "*When the insurance contract calls for the consent of the insured as a condition for settlement* but is silent as to the irrevocability of that consent, we must be guided in the interpretation of the insurance contract by the overriding fiduciary responsibilities of the insurer." 419 A.2d at 423 (emphasis added).

Plaintiff further argues Mt. Hawley should be estopped from claiming Plaintiff is its insured when Mt. Hawley's conduct as an insurer supports a cause of action for bad faith.  In support, Plaintiff cites *Chavez v. Chenoweth*, 553 P.2d 703, 710 (N.M. Ct. App. 1976) ("When a liability insurance company, by the terms of its policy, obtains the power to determine whether an offer of compromise of a claim should be accepted or rejected, it creates a fiduciary relationship between it and its insured."), and *Dairyland Ins. Co. v. Herman*, 954 P.2d 56, 61 (N.M. 1998) ("an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration").  While these cases support the existence of a duty of good faith between insurer and insured, Plaintiff has not alleged a bad faith claim against Mt. Hawley.  The only claim Plaintiff has pending before this Court is for declaratory relief regarding whether Mt. Hawley has the right to settle the malpractice action without his consent and, if so, whether Plaintiff can disavow his insurance coverage.

None of the cases cited by Plaintiff preclude Mt. Hawley from effectuating a good-faith settlement of the malpractice action against Plaintiff based on the express authority provided in the settlement provision of the Mt. Hawley policy. As this court has recognized, when an insurer assumes a party's defense, as Mt. Hawley has done here, it will generally have sole authority over the defense of a claim, including whether to settle or go to trial. *See Greigo v. Douglas*, 264 F.Supp.3d 1109, 1113 (D.N.M. 2017); *see also Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 690 P.2d 1022, 1024 (N.M. 1984) (noting that where an insured has a duty to defend, "[i]t is left to the judgment of the insurer whether to settle the case or not").

Less clear is whether Dr. Valenzuela has the right to disavow coverage under the Mt. Hawley policy and thereby control his own defense and settlement of the underlying malpractice action. Though the Court found no case directly addressing this issue, the Court of Appeals of New Mexico has suggested that such a right exists. While expressing the rule that "actual notice [of a claim against the insured] presumptively triggers a duty to defend," the court held the duty to defend is not breached when "the insured knowingly decline[s] a defense." *Garcia v. Underwriters at Lloyd's London*, 156 P.3d 712, 721 (N.M. Ct. App. 2007). *See also Garcia v. Underwriters at Lloyd's, London*, 182 P.3d 113, 114 (N.M. 2008) (expressly adopting the Court of Appeals' analysis, and holding that actual notice is sufficient to trigger the duty to defend *unless* the insured affirmatively declines a defense). The New Mexico Court of Appeals further explained:

> While we recognize that insurers may fear that this rule will impose some kind of automatic duty to become involved in litigation, we think this fear is unfounded. When actual notice is given to an insurer, the insurer may protect its interests simply by contacting the insured to ascertain whether the insurer's assistance is desired. *If the insured indicates that it does not want the insurer's assistance, or is unresponsive or uncooperative, the insurer is relieved of its duty to defend.* We conclude that the policy of encouraging insurers to perform their contractual obligations outweighs any requirement that allows insurers to default on their

> obligation to defend simply because the insured did not formally ask the insurer to
> do what the insurance contract already requires.

156 P.3d at 722 (emphasis added) (internal quotation and citation omitted).

Here, the insurer [Mt. Hawley] received actual notice of the malpractice action from the insured [Dr. Valenzuela], thus triggering its duty to defend. Can the insured subsequently decline a defense and also disavow coverage? Dr. Valenzuela later attempted to disavow coverage, and apparently Mt. Hawley's assistance in his defense as well, though not until Mt. Hawley had provided a defense for over two years. Must an insured immediately disavow coverage and decline assistance from an insurer or be forever bound by the insurance policy terms? If not, under what circumstances and/or limitations is an insured allowed to do so? And what, if any, obligations or duties remain on the part of the insurer? Plaintiff offers no cases addressing these issues.

Defendant argues Plaintiff's attempt to now belatedly disavow coverage under a policy that clearly insures him would not protect Mt. Hawley from a claim asserted by the underlying plaintiffs should they become judgment creditors. Though the cases cited by Defendant establish the proposition that a judgment creditor can bring suit against the defendant's insurer after obtaining a judgment against the insured, they do not involve a situation where the insured has affirmatively declined a defense or disavowed coverage. *See Cordova v. Peavey Co.*, 2005 WL 8163790, at *3-4 (D.N.M. June 3, 2005).

Because the question of whether Plaintiff can disavow his insurance coverage with Mt. Hawley – thereby controlling his own defense of the malpractice action and prohibiting Mt. Hawley from settling claims against him – is solely a question of state law and "one for which answer is not provided by a controlling (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals[,] or (b) constitutional provision or statute of [New Mexico]," this Court finds this dispositive question is appropriate for certification to the New Mexico

Supreme Court. *See* N.M. R. App. P. 12-607(A)(1). In addition the issue presents an important and unsettled question of state law and legal policy which has impact beyond the parameters of this case. *See United States v. Reese*, 505 Fed. App'x 733, 2012 WL 6553794 (10th Cir. Dec. 11, 2012). Accordingly, the Court will direct the parties to provide briefing regarding the Court's intention to certify this question and proposing the content of the certification order. *See* N.M. R. App. P. 12-607(C).

## CONCLUSION

Plaintiff contracted with Alliance for the Mt. Hawley policy which provides coverage to Plaintiff as an additional named insured. Plaintiff is therefore bound by the policy terms giving Mt. Hawley the right to settle the underlying malpractice claims against Plaintiff as it deems necessary and without Plaintiff's consent. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for declaratory relief "ordering Mt. Hawley to cease its attempts to improperly impose upon Dr. Valenzuela the restrictions of its [policy]." (Compl. at 10.)

With respect to Plaintiff's alternative claim for declaratory relief – a finding that Dr. Valenzuela has the right to disavow coverage under the Mt. Hawley policy and thereby not be bound by its terms – the Court finds it appropriate to certify the question to the New Mexico Supreme Court. THEREFORE, it is hereby

ORDERED that *Plaintiff's Motion for Summary Judgment* (ECF No. 31) is DENIED; it is further

ORDERED that *Defendant's Motion for Summary Judgment* (ECF No. 32) is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that each party shall, within **fourteen (14) days** of the date of this order, submit a brief (no more than 10 pages in length) regarding the Court's intention to certify the question of

law and offering proposed content of the certification order.  A joint brief may be submitted if the parties can agree on the question of law to be answered and a statement of facts relevant to the question.

Dated this 29Th day of April, 2021.

Scott W. Skavdahl
United States District Judge